UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
CERVECERÍA MODELO DE MÉXICO,  :
S. DE R.L. DE C.V.,
:
:
Plaintiff,        :
v.             :
:
:                   No. 21-CV-7316
CB BRAND STRATEGIES, LLC,          :
CROWN IMPORTS LLC, and             :
COMPAÑÍA CERVECERA DE              :
COAHUILA, S. DE R.L. DE C.V.,       :
:
:
Defendants.      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

Plaintiff Cervecería Modelo de México, S. de R.L. de C.V. ("Modelo"), by and through its undersigned attorneys, files this Complaint for Preliminary and Permanent Injunctive Relief against Defendants CB Brand Strategies, LLC, Crown Imports LLC, and Compañía Cervecera de Coahuila, S. de R.L. de C.V. (together, "Constellation" or "Defendants"), and alleges as follows on knowledge as to its own acts and on information and belief as to all others:

INTRODUCTION

1.      Constellation recently launched two new beers—using the MODELO® trademarks—under a new "Modelo Reserva" name: one beer that claims it is "Finished on aged wood from Tequila Barrels" (the "Tequila Barrels Beer"), and a separate beer claiming to be "Finished on aged wood from Bourbon Barrels" (the "Bourbon Barrels Beer").  For the reasons discussed below, the Tequila Barrels Beer violates both Mexican and U.S. laws that strictly restrict the use of the word "Tequila," which constitutes a violation of the parties' 2013 Sublicense Agreement (the "2013 Sublicense") (Ex. A).  The Bourbon Barrels Beer also

violates the 2013 Sublicense because Constellation can only market and sell "Mexican-style Beer." Bourbon has nothing to do with Mexico, and trade dress promoting a beer "finished on aged wood from Bourbon Barrels" violates the requirement that Constellation only market and sell "Mexican-style Beer." Finally, both beers violate the provision of the 2013 Sublicense that expressly prohibits the type of spirit-branding in which Constellation is engaged. Modelo therefore seeks this Court's immediate assistance to stop Constellation from both violating the law and undermining Modelo's brand, reputation and goodwill, and to protect Modelo's rights under the 2013 Sublicense that governs the relationship between Modelo and Constellation.

2.      Tequila is both a highly valued and well-regulated "Appellation of Origin," protected since 1974 and owned exclusively by the Government of Mexico. The Federal Industrial Property Protection Law of Mexico establishes that all protected appellations of origin are national assets and may only be used following an authorization issued by the Mexican Institute of Industrial Property (the "IMPI"). To use the word "Tequila" in compliance with Mexican law, a beverage—including not only a tequila itself, but also any other beverage such as a beer—must meet specific criteria set forth in applicable regulations, such as, *inter alia*, the Certification Mark Guidelines and the Mexican Official Standard for Tequila. To oversee and certify that all such products conform to these guidelines and standards, the Government of Mexico authorized the Consejo Regulador del Tequila ("CRT"), a private organization based in Mexico, to enforce the rules regarding the Tequila appellation of origin. The United States has, by treaty and by law, agreed to respect and enforce the Government of Mexico's rights to the Tequila appellation of origin.

3.      Among the many reasons why Constellation is forbidden from using the word "Tequila" is that Constellation, by its own admission, does not have authorization by the

CRT or IMPI as required to use the protected appellation of origin "Tequila" as a descriptor on "Modelo Reserva." Constellation is thus in direct violation of Mexican and U.S. law. As discussed below, Constellation's failure to comply with "all applicable laws, rules, and regulations" constitutes a breach of the 2013 Sublicense. Constellation's attempt to associate the Tequila Barrels Beer with "Tequila," despite lacking the requisite authorizations from the Mexican government, is likely to confuse consumers by suggesting (falsely) that Constellation's product complies with the requirements and standards governing the use of the term "Tequila."

4.   On June 14, 2021, Modelo notified Constellation that Constellation and its affiliates were infringing the MODELO® trademarks and breaching the 2013 Sublicense. Constellation responded to Modelo on June 21, 2021, stating not only that Constellation refused to stop selling Modelo Reserva, but also that "Modelo Reserva does not require any approval from the [CRT]."

5.   Constellation's decision to flout Mexican and U.S. law in connection with its launch of the Tequila Barrels Beer quickly drew the ire of the CRT. On July 23, 2021, the CRT wrote to Constellation, demanding that it "[i]mmediately" cease its violation of Mexican and U.S. law through its sale and marketing of the Tequila Barrels Beer. (Ex. B.) The CRT stated its position as follows:

> "In view of the recognition of TEQUILA as a certification mark and the TTB regulations requiring the use of TEQUILA in compliance with the laws of Mexico, the use of 'Tequila' on the Product packaging and advertising is in violation of U.S. laws and regulations." (*Id.* at 4.)

6.   As a harbinger of the market, brand and regulatory confusion and damage that Constellation is creating for Modelo, the CRT sent the same letter to Modelo, asking that Modelo cease and desist from engaging in the conduct of Constellation which

Modelo, a separate company, obviously does not control. Modelo, through counsel, has informed the CRT that Constellation is responsible for the Modelo Reserva products.

7.     To the best of Modelo's knowledge, Constellation continues to refuse to cease its ongoing misuse of the Tequila appellation.[1]  This disregard is inviting a public dispute between Constellation and the CRT, which has potentially highly negative consequences for Modelo and the Modelo brand.

8.     Because the Tequila appellation of origin is a Mexican 'national asset' (*hien nacional*) under Mexican law, disputes regarding the Tequila designation are very public in Mexico.  For example, the CRT recently concluded a lengthy battle with Heineken, a Dutch brewer, over its Desperado beer product, which similarly used the word Tequila in its marketing.  So prominent was the CRT's dispute with Heineken that the Mexican President, Andres Manuel López Obrador, promised to defend the tequila industry during one of his daily press conferences.  He said: *"We have to protect the fruit of the work and efforts and traditions of our people,"* and, *"We have to defend the origin of tequila and mezcal and other authentically Mexican goods*."

9.     Upon the resolution of its dispute with Heineken several weeks ago, the CRT published a full page advertisement in one of Mexico's leading newspapers thanking the President and the Secretary of Economy for their help throughout the litigation.

10.    Any similar publicity that wrongfully imputes to Modelo and its MODELO® Marks a misuse of Mexico's Tequila laws would cause serious and irreparable

---

[1]     Recently, in fact, the CEO of Constellation Brands, Inc. touted that "Modelo Reserva is doing well in the test markets."  *See* Beer Business Daily, *Constellation Chief on their single biggest innovation bet, and more* (Aug. 17, 2021) (Ex. C).  The CEO made no mention of the CRT's demand that Constellation "[i]mmediately" cease its violation of Mexican and U.S. law.

harm to Modelo's sterling reputation in Mexico, and beyond—not only with the Mexican government and the CRT, but also with business partners, the business community at-large, opinion leaders, and the general public (including the consumers of Modelo's beers).  Modelo is also likely to suffer lost sales in Mexico that would be difficult to calculate, as consumers may choose not to purchase products from a company that is (undeservedly) perceived as failing to respect Mexican heritage and law.

11.     If upsetting the Government of Mexico and damaging Modelo's public image were not enough, Constellation's violation of the law means it is also in breach of its 2013 Sublicense obligations to Modelo.  Section 3.1 of the 2013 Sublicense provides that Constellation may only use and/or reproduce the MODELO® Marks "in accordance with all applicable laws, rules, and regulations." (Ex. A § 3.1.)  This provision constitutes an important guardrail that allows Modelo "[t]o protect the reputation and strength of the Trademarks and the goodwill associated with each Trademark."  (*Id.*)  The CRT's cease and desist letter and potential public litigation over Constellation's failure to comply with U.S and Mexican law underscores the importance of this protection.

12.     Further, the 2013 Sublicense reserves for Modelo—<u>not</u> Constellation— the right to make the brand-critical decisions of whether (and when) to extend the Modelo brand by affiliating it with spirits.  Section 2.15(c) bars Constellation from adopting, referring to or incorporating any sort of spirit-branding (*e.g.*, using the word "Tequila" or "Bourbon") until such time as <u>Modelo</u> decides to expand its marks to beers using spirit branding. Constellation is only authorized to use any sort of spirit-branding if and when Modelo, as the owner of the (sub)licensed marks, decides to do so.  To date, Modelo has not done so, and Constellation has never claimed otherwise.

13.     As a further restriction, the 2013 Sublicense only allows Constellation to produce "Mexican-style" beer, and prohibits Constellation from using visual cues in the naming, labeling and trade dress that indicate any origin other than Mexico.[2]  Constellation's Bourbon Barrels Beer claims that it is "Finished on aged wood from Bourbon Barrels," but Bourbon is a distinctive product of the United States and has nothing whatsoever to do with Mexico or Mexican beer.

14.     Because of the immediate harm that will flow to Modelo from Constellation's misuse of Modelo's trademarks, Modelo brings this action to seek injunctive relief to stop Constellation from tarnishing Modelo's reputation and from breaching the 2013 Sublicense.  Absent injunctive relief, Modelo's good name will be brought into a very public fight with the CRT, all because Constellation refuses to obey applicable laws and its contractual obligations.

15.     While under ordinary circumstances a licensor could terminate a rogue licensee for similar misconduct, Modelo and Constellation operate under a unique arrangement.  The 2013 Sublicense was the result of a negotiated divestiture overseen by the United States Department of Justice and continues "in perpetuity" – it does not provide Modelo with the right to terminate the Sublicense.  (*See* Ex. A § 4.1.)  Modelo's exclusive remedy for breach is to seek enforcement of its rights under the 2013 Sublicense and bring a claim "at law or equity for any claimed breach, but excluding any remedies that would seek to terminate, or

---

[2]     The 2013 Sublicense defines "Mexican-style Beer" as, "any Beer bearing the Trademarks that does not bear ***any*** trademarks, trade names or trade dress that would reasonably be interpreted to imply to consumers in the Territory an origin other than Mexico." (Ex. A § 1.1 at 7 (emphasis added).)

result in the termination of this [2013 Sublicense]." (*Id.*)  The Court is therefore Modelo's exclusive avenue for relief from irreparable harm inflicted upon it by Constellation.

16.     Constellation's misconduct is the latest attempt in a broader and deliberate effort by Constellation to use (and misuse) Modelo's trademarks.  After six years of a relatively positive relationship, Constellation launched a "Corona Hard Seltzer," which is neither a Beer nor a Mexican-style Beer as required under the 2013 Sublicense but rather a "spiked sparkling water" made with alcohol from sugar.  That conduct is already subject to litigation pending in the United States District Court for the Southern District of New York.[3]

## THE PARTIES

17.     Modelo is a Mexican corporation with its principal place of business at Cerrada de Palomas 22, Piso 6, Reforma Social, Miguel Hidalgo, Mexico City 11650, Mexico.  Modelo was founded in 1922 and is famous for having created and brewed many well-loved brands of beer, including "Corona," "Modelo," "Pacífico," and "Victoria."  Given the popularity of Modelo's beers in the United States, Modelo has come to be known as the producer of high-quality, broadly appreciated, Mexican-style beers.

18.     Defendant CB Brand Strategies, LLC ("CBBS") is a Delaware corporation with its principal place of business in Zug, Switzerland.  CBBS traces its origins to being a "bulk wine" producer, and to this day continues to own numerous wine labels.  CBBS has since expanded into spirits, beer (through its 2013 Sublicense with Modelo), and

---

[3]     *See Cervecería Modelo de Mexico, S. de R.L. de C.V.* v. *CB Brand Strategies, LLC et al.*, Case No. 1:21-cv-01317-LAK (S.D.N.Y.) (the "Corona Hard Seltzer Litigation").  On June 16, 2021, the Court denied Constellation's motion to dismiss "in all respects," holding that Modelo's complaint "states plausible claims for breach of contract and trademark infringement."  *Id.* at Dkt. No. 34.

other alcoholic beverages.  CBBS is a successor by assignment to Constellation Beers LTD., a signatory to the 2013 Sublicense.

19.     Defendant Crown Imports LLC ("Crown") is a Delaware limited liability company with its principal place of business in Chicago, Illinois.  Crown imports and distributes the "Modelo" and "Corona" beer portfolios in the United States, and is the U.S. distributor of Modelo Reserva.

20.     Defendant Compañía Cervecera de Coahuila, S. de R.L. de C.V. ("CCC") is a Mexico limited liability company with its principal place of business in Nava, Coahuila, Mexico.  CCC produces and packages Modelo Reserva in Nava, Coahuila, Mexico, and is responsible for exporting Modelo Reserva from Mexico to the U.S.

## JURISDICTION AND VENUE

21.     The Court has original subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338.  The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over claims arising under the laws of the State of New York because they are so related to the claims over which the Court has original jurisdiction that they form part of the same "case or controversy" under Article III of the United States Constitution.

22.     This Court has personal jurisdiction over Defendants pursuant to New York General Obligations Law § 5-1402 because the action arises out of an agreement for which a choice of New York law has been made, and which (i) relates to obligations arising out of a transaction covering in the aggregate not less than one million dollars, and (ii) contains a provision whereby the parties agreed to submit to the jurisdiction of the courts of this State.[4]

---

[4]     Pursuant to Section 6.2 of the 2013 Sublicense, "[Constellation] and [Modelo] irrevocably consent to the exclusive personal jurisdiction and venue of the courts of the State

23.     Venue is proper in this District pursuant to (a) 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this District, and (b) the aforementioned express forum selection clause.

24.     As permitted under the 2013 Sublicense, Modelo brings this suit seeking injunctive relief to prevent Constellation's violations of applicable law and breaches of the 2013 Sublicense.  (*See* Ex. A § 9.8.)  Because injunctive relief is necessary to avoid irreparable harm resulting from Constellation's actions; will preserve the status quo during any non-binding arbitration the parties may undertake; and is expressly allowed by the CPR rules governing the non-binding arbitration process provided for in the 2013 Sublicense,[5] Modelo may commence this judicial action for injunctive relief.

## RELEVANT FACTS

### Background

25.     Founded in Mexico in 1922, Modelo is the preeminent brewer of Mexican beers, and is responsible for some of the most well-known beers in the world.  Modelo launched its eponymous "Modelo" brand in 1925.  Today, Modelo is responsible for more than 30,000 jobs, 11 breweries, and 20 production and brewing plants in Mexico.  Modelo owns the trademark and rights to many famous trademarks all over the world, including, for example,

---

of New York and the federal courts of the United States, in each case sitting in New York County, in connection with any action or proceeding arising out of or relating to this Agreement.  [Constellation] and [Modelo] hereby irrevocably waive, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of the venue of such action or proceeding brought in such a court and any claim that any such action or proceeding brought in such court has been brought in an inconvenient forum."

[5]     *See* Ex. A § 6.2 (providing for non-binding arbitration "before the CPR Institute for Dispute Resolution"); CPR 2018 Non-Administered International Arbitration Rules, Rule 14.12 ("A request for emergency measures by a party to a court shall not be deemed incompatible with the agreement to arbitrate, including the agreement to this Rule 14, or as a waiver of that agreement.").

Mexican trademarks for CORONA, MODELO, MODELO ESPECIAL, and the Modelo bottle label/design.

26.    Modelo became part of Anheuser-Busch InBev SA/NV ("ABI") in 2013.

27.    After ABI and Modelo announced their merger, the U.S. Department of Justice ("DOJ") filed a lawsuit claiming that the merger would violate Section 7 of the Clayton Act, which prohibits mergers and acquisitions when the effect "may be substantially to lessen competition, or to tend to create a monopoly."  (*United States* v. *Anheuser-Busch InBev SA/NV, et al.*, No. 13-CV-127 (Jan. 31, 2013) (ECF No. 1).)

28.    To address the DOJ's concerns, ABI and Modelo agreed to divest Modelo's beer business in the United States through a license to Constellation.  The terms and conditions of the resolution of the DOJ action are memorialized in the October 21, 2013 Final Judgment (the "Final Judgment"), so-ordered by the United States District Court for the District of Columbia in *United States* v. *Anheuser-Busch InBev SA/NV, et al.*, No. 13-CV-127 (ECF No. 48).  The terms of the Modelo-Constellation license are set forth in the 2013 Sublicense, attached as an exhibit to the Final Judgment (ECF No. 45-2 at 73).

29.    Pursuant to the 2013 Sublicense, Modelo sold and Constellation acquired, for approximately $4.75 billion, various assets related to Modelo's U.S. beer business and the right to use certain intellectual property in accordance with the terms and conditions of that agreement.

### The 2013 Sublicense

30.     The 2013 Sublicense[6] identifies multiple U.S. trademarks for "Modelo"-brand beers owned by Modelo and licensed to Constellation, including those consisting of the word "Modelo" (*e.g.*, Registration Nos. 1,022,817 and 2,631,391); variants of and/or additions to that word, such as "Modelo Especial" and "Negra Modelo" (*e.g.*, Registration Nos. 1,055,321, 1,217,760, 2,631,389, and 2,631,390); and/or stylized versions of those word(s) (*e.g.*, Registration Nos. 3,567,209 and 4,060,986).[7]  There are significant limits set forth in the Sublicense as to what Constellation can, and cannot, do with these trademarks.

31.     The licensed trademarks, which are set forth in Exhibits B and D to the 2013 Sublicense and include any amendments or supplements to those exhibits and "Brand Extension Marks," are defined in the 2013 Sublicense as "Trademarks."  (*See* Ex. A §§ 1.1 at 4, 10, 2.15(b).)  The federally registered MODELO® Trademarks (and additional federally registered MODELO®-related marks asserted here) for alcoholic beverages that are active today (collectively, the "MODELO® Marks") are listed in Appendix 1.

32.     Constellation must use and/or reproduce the MODELO® Marks "in accordance with all applicable laws, rules, and regulations."  (*Id.* § 3.1.)  Particularly in the context of a new product, Section 3.1 constitutes an important guardrail that allows Modelo

---

[6]     Modelo and CBBS are the successors to the signatories to the 2013 Sublicense. Pursuant to Section 2.6 of that agreement, CBBS has granted sublicenses under the 2013 Sublicense to its affiliates Crown and CCC; those sublicenses bind Crown and CCC to the 2013 Sublicense.  (*See* Ex. A § 2.6(a).)

[7]     Under Section 2.10(a), "[o]wnership of the Trademarks and of the goodwill associated therewith shall at all times remain in and inure solely to the benefit of [Modelo], and any trademark rights or goodwill with respect thereto which may accrue as a result of advertising or sales of Importer Products or Interim Products shall be the sole and exclusive property of [Modelo]."  (Ex. A § 2.10(a).)

"[t]o protect the reputation and strength of the Trademarks and the goodwill associated with each Trademark."  (*Id.*)

33.    Constellation is permitted to innovate under the 2013 Sublicense. Section 2.15 of the 2013 Sublicense grants Constellation certain expansion rights to sell new Brand Extension Beers, and to adopt new Brand Extension Marks in connection with such Beers.  (*Id.* § 2.15.)  "Brand Extension Beer" is defined as, "Beer packaged in Containers bearing a Brand Extension Mark," which in turn means, "a Mark that is a derivative of one or more of the Trademarks for use in the marketing, merchandising, promotion, advertisement (including sponsorship activities in connection with the foregoing), licensing, distribution and sale of Mexican-style Beer."  (*Id.* § 1.1 at 4.)

34.    Modelo retains ownership of "any and all Trademarks and Trade Dress related to any Brand Extension Beer."  (*Id.* § 2.15(e).)  Accordingly, Constellation's authority with respect to Brand Extension Beers and Brand Extension Marks is limited in the 2013 Sublicense so that Modelo, as owner of the marks, can protect its valuable brands from products that violate the 2013 Sublicense.  Of course, Constellation may innovate and bring to market any non-Modelo product it likes, but if the product is to bear a licensed Modelo U.S. trademark, it must be within the scope of the 2013 Sublicense and comply with the agreed-upon limitations for Brand Extension Beers.

35.    Critically, the 2013 Sublicense leaves the decision whether to extend the MODELO® Marks into spirit-branding to Modelo, not to Constellation.  The 2013 Sublicense provides that Constellation "shall not adopt a Brand Extension Mark that adopts, refers to or incorporates the name of any type of distilled spirit (such as Corona Tequila)," or "use any distilled spirits as an ingredient in any Recipe for a Brand Extension Beer," unless <u>Modelo</u>

does so first for a product marketed in Mexico or Canada.  (*Id.* § 2.15(c).)  To date, Modelo has not decided to market any product in Mexico or Canada that would permit Constellation to spirit-brand any new Brand Extension Beer.

36.      The 2013 Sublicense further requires that any Brand Extension Beer must be a "Mexican-style Beer."  (*Id.* § 2.15(a).)  The 2013 Sublicense defines "Mexican-style Beer" as, "any Beer bearing the Trademarks that does not bear ***any*** trademarks, trade names or trade dress that would reasonably be interpreted to imply to consumers in the Territory an origin other than Mexico."  (*Id.* § 1.1 at 7 (emphasis added).)

37.      The 2013 Sublicense also provides Modelo with access to immediate judicial assistance in the event of irreparable harm.  The parties agreed as follows:

> "[A] breach or threatened breach by them of any provision of this Agreement will result in the other entity suffering irreparable harm which cannot be calculated or fully or adequately compensated by recovery of damages alone. Accordingly, the parties agree that any party may, in its discretion (and without limiting any other available remedies), apply to any court of law or equity of competent jurisdiction for specific performance and injunctive relief (without necessity of posting a bond or undertaking in connection therewith) in order to enforce or prevent any violations of this Agreement, and any party against whom such proceeding is brought hereby waives the claim or defense that such party has an adequate remedy at law and agrees not to raise the defense that the other party has an adequate remedy at law.  The failure of either party at any time to require performance of any provision of this Agreement shall in no manner affect such party's right to enforce such provision at any later time.  No waiver by any party of any provision, or the breach of any provision, contained in this Agreement shall be deemed to be a further or continuing waiver of such or any similar provision or breach."  (*Id.* § 9.8.)

**Modelo Reserva**

38.      To capitalize on Modelo's sales growth and valuable brand equity, Constellation has decided to utilize the MODELO® Marks in connection with new products.

However, Constellation never notified Modelo of its plans for Modelo Reserva products as required by the 2013 Sublicense (*see* Ex. A § 2.2(b))—despite apparently developing this product contemporaneously with another agave-flavored *Pacífico* product about which Constellation did notify Modelo.

39.     Since discovering the Modelo Reserva products on the market, Modelo has learned that during Constellation's Q4 FY 2020 earnings call on April 3, 2020, Constellation stated that, as part of its attempt to "extend the brand" to new areas through "innovation," Constellation would be "testing new spirits, barrel-aged offerings" called "Modelo Reserva" that "will be available in [unspecified] test markets in tequila and bourbon barrel-aged options."   Constellation further noted that "Modelo's strength with Hispanic consumers continues to fuel the growth of this brand and with more than one million Hispanics reaching legal drinking age each year, combined with our continued efforts to broaden our appeal with general market consumers; we believe we're only scratching the surface of where this brand can go."

40.     Constellation's sole initial advertising for their "test" of the two different Modelo Reserva beers was a single tweet on April 9, 2020.[8]   The tweet was accompanied by a six-second video, which as shown in Figure 1 emphasized Modelo Reserva's "barrel-aged flavor" and described both beers as an "easy-to-drink lager":

---

[8]     Modelo USA (@ModeloUSA), TWITTER (April 9, 2020, 3:38 PM), https://twitter.com /ModeloUSA/status/1248379770796048384.  The phrase "Fighting Spirit" used in this tweet is commonly used in connection with the marketing of existing Modelo-branded beers.

Figure 1



41.     Other than that single tweet, Constellation did not make any further public statements about the Modelo Reserva products for over a year, never included Modelo Reserva in the list of available products on Constellation's website, and sold only small quantities of Modelo Reserva in limited test markets.

42.     Over a year after the initial tweet, on April 15, 2021, Constellation began actually marketing the product to a broader release.[9]   As shown in Figure 2 below,

---

[9]     *See* Modelo USA, *Modelo Reserva*, https://www.youtube.com/watch?v=-r9YDp5HwwU and https://www.youtube.com/watch?v=Hhd-FxIbISw (English), https://www.youtube.com/watch?v=Sy_kEoxPd3Q and https://www.youtube.com/watch?v=VWZBwHE0neo (Spanish) (all published Apr. 15, 2021).

Constellation chose to feature the word "TEQUILA" in the largest font near the center of the picture, above an image of the Modelo Reserva bottle:

<u>Figure 2</u>



As shown in <u>Figures 3-6</u>, Constellation's marketing and packaging of Modelo Reserva alternatively uses the phrases "Finished on aged wood from Tequila Barrels" or "Finished on aged wood from Bourbon Barrels," with the word "Tequila" or "Bourbon" always featured prominently along with the MODELO® Marks:[10]

---

[10]   By contrast, the phrase "Pilsner-Style Lager" is barely legible on Constellation's packaging for Modelo Reserva because it is relegated to the bottom corner of the label and printed in the tiniest of fonts in a color that blends in to the background of the label or box.

-16-

Figure 3



Figure 4[11]



---

[11]     The red and blue circles added to Figures 4-6 indicate where the Tequila Barrels Beer and Bourbon Barrels Bear use the phrases "Finished on aged wood from Tequila Barrels" and "Finished on aged wood from Bourbon Barrels," respectively.

Figure 5





Figure 6



44.     Constellation's marketing strategy with respect to Modelo Reserva is consistent with Constellation's stated reason for using the MODELO® Marks in connection with these unproven products:  Constellation believes they can exploit the MODELO® Marks to "extend the brand" that Constellation characterizes as a "foundational play for this company for many, many more years to come," and thereby sell more barrel-aged beer than they otherwise would be able to do without the Modelo brand.   Similarly, as evidenced by Constellation's prominent use of 'Tequila" and "Bourbon" in the marketing and packaging for Modelo Reserva, Constellation believes that they can sell more Modelo Reserva by closely associating these new products with the names of popular spirits that carry with them a well-established taste, quality and origin in the minds of consumers.

45.     It is Modelo, not Constellation, that owns the rights in the MODELO® Marks.[12]  While Constellation is permitted to innovate with Brand Extension Beers under the 2013 Sublicense, it is ultimately Modelo that must supervise the use of its trademarks to prevent them from being used unlawfully and to ensure that the goodwill associated with the MODELO® Marks continues to grow.  The risk that a Modelo-branded product could have a negative impact on the Modelo brand more broadly is one of the key reasons why, in connection with the 2013 Sublicense, Modelo bargained for—and secured—significant limitations on Constellation's authority to use MODELO® Marks in connection with Brand Extension Beers.

46.     Constellation's lack of notice and communication about its plans for the product with Modelo, as required under the 2013 Sublicense, stands in stark contrast to how

---

[12]     *See* Ex. A § 2.10 ("Ownership of the Trademarks and of the goodwill associated therewith shall at all times remain in and inure solely to the benefit of [Modelo].").

Constellation worked with Modelo regarding the possible launch of another "agave" product, a Pacífico beverage that raised similar issues. In the Summer of 2020, Constellation sought Modelo's approval of design modifications related to agave flavoring and marketing for a Pacífico-branded product pursuant to the 2013 Sublicense. In correspondence related to that modification, Modelo reiterated the prohibition under the 2013 Sublicense from using branding related to distilled spirits under Section 2.15(c).[13]

47.     On information and belief, the reason for Constellation's reticence with Modelo Reserva was that it knew the products are not permitted under the 2013 Sublicense. As explained above, the 2013 Sublicense specifically prohibits Constellation from adopting a spirit-branded product such as Modelo Reserva. Nevertheless, Constellation has proceeded with its launch of Modelo Reserva in direct violation of Section 2.15(c). Each of the Brand Extension Marks that Constellation has adopted—"Modelo Reserva Finished on aged wood from Tequila Barrels" and "Modelo Reserva Finished on aged wood from Bourbon Barrels"— violates Section 2.15(c) because each such Brand Extension Mark "adopts, refers to or incorporates" the name of a distilled spirit (tequila and bourbon, respectively).

48.     The result is the same even if one considers "Modelo Reserva" to be the relevant "Brand Extension Mark" for purposes of Section 2.15(c). "Reserva" is Spanish for "Reserve," a word that is commonly used to refer to distilled spirits such as tequila and

---

[13]     Even more recently, during oral argument in the related Corona Hard Seltzer Litigation, counsel for Constellation acknowledged that Section 2.15(c) "[is], of course, a reservation of rights for ABI. Without that, of course, the parties were concerned that someone might be able to pour rum, or vodka, *or tequila, or whisky* into, quote unquote, beer, so malt beverage, traditional beer, etc., and still be covered by the license." *See* Transcript of June 16, 2021 Oral Argument at 14:14-19, *Cerveceria Modelo de Mexico, S. de R.L. de C.V.* v. *CB Brand Strategies, LLC et al.*, Case No. 1:21-cv-01317-LAK (S.D.N.Y.) (emphasis added).

bourbon.[14]  While "Reserve" can sometimes be used to refer to something other than distilled spirits (*e.g.*, wine), Constellation's marketing of Modelo Reserva—which invariably associates "Reserva" with the phrases "Finished on aged wood from Tequila Barrels" or "Finished on aged wood from Bourbon Barrels"—demonstrates that, in this context, there can be no doubt that Constellation is using "Reserva" to refer to distilled spirits (*i.e.*, tequila and bourbon).

49.     The Bourbon Barrels Beer also violates Section 2.15(a) of the 2013 Sublicense for the additional reason that it is not a "Mexican-style Beer."  As explained above, the 2013 Sublicense allows Constellation to adopt Brand Extension Marks "*solely*" for "Mexican-style Beer," which is specifically defined as "any Beer bearing the Trademarks that does not bear *any* trademarks, trade names or trade dress that would reasonably be interpreted to imply to consumers in the [United States] an origin other than Mexico." (Ex. A §§ 2.15(a), 1.1 at 7 (emphasis added).)  Given that bourbon has a deep history in the United States[15]—Kentucky, in particular—and no meaningful connection to Mexico, Mexican industry or culture, or the Mexican market, Constellation's use of "any" trade dress (the references to Bourbon) "would reasonably be interpreted to imply to consumers . . . an origin other than Mexico";  Bourbon is manifestly a product of the United States,[16] and consumers of the

---

[14]     *See, e.g.*, Woodford Reserve, https://www.woodfordreserve.com/ (bourbon); Jefferson's Reserve, https://jeffersonsbourbon.com/jeffersons-reserve/ (bourbon); Reserva De La Familia, https://cuervo.com/products/reserva-de-la-familia/ (tequila).

[15]     In 1964, the United States Congress officially designated bourbon "a distinctive product of the United States," noting that "Bourbon whisky has achieved recognition and acceptance throughout the world as a distinctive product of the United States."  Bourbon Whiskey Designated as Distinctive Product of U.S., S. Con. Res. 19, 88th Cong., 78 Stat. 1208 (1964).  Accordingly, the TTB classifies bourbon whiskies as "distinctive products of the United States," and thus requires that "the word 'bourbon' shall not be used to describe any whisky or whisky-based distilled spirits not produced in the United States." 27 C.F.R. § 5.22(l)(1).

[16]     For example, in a video review of Modelo Reserva, one reviewer introduced the Bourbon Barrels Beer by stating, "bourbon is a whiskey they make in the United States.  I

Bourbon Barrels Beer would reasonably be confused about the product's origin.  Other than a "country of origin" disclosure in fine print ("IMPORTED BEER FROM MEXICO") that is required by federal regulations, *see* 19 C.F.R. §§ 102.0, § 134.0, Constellation's Bourbon Barrels Beer uses trade dress that is inconsistent with the Mexican-style Beer requirement, and thus undermines the Modelo brand's authentic Mexican heritage and tradition.

### Constellation Ignores Modelo's Notice Letter

50.     The name Tequila has long held special legal, economic and cultural significance to the people of Mexico and to the people of the particular geographical region from which the beverage originates, *i.e.*, an area primarily within the central western State of Jalisco, Mexico.  "Tequila" is thus recognized under Mexican, United States and international law as distinctive product of Mexico, a protected appellation of origin and a U.S. geographic certification mark.  In 1978, the appellation of origin "Tequila" was registered before the World Industrial Property Organization (WIPO).  In the United States, the U.S. Alcohol and Tobacco Tax and Trade Bureau (the "TTB") has officially classified "Tequila" as "a distinctive product of Mexico" for almost 40 years, and thus requires that "Tequila must be made in Mexico, in compliance with the laws and regulations of Mexico governing the manufacture of Tequila for consumption in that country."  *See* 27 C.F.R. § 5.22(g)(1).[17]  More recently, in 2017, "Tequila"

---

don't know, if they sell this beer over there in Mexico.  I haven't seen it there and haven't seen advertisements."  champagnepp, *Modelo: Bourbon & Tequila Review (Espanol) (Subtitles in English Available)*, https://www.youtube.com/watch?v=NlcFiBdPPwM (July 24, 2020) (starting at 0:30).

[17]     The TTB issues Certifications of Label Approval (COLAs) for alcoholic beverages, including beer products, to certify compliance with the TTB's specific labeling requirements. *See* 27 C.F.R. Part 7.  A COLA is required in order to introduce an alcoholic beverage to the United States market, but the fact that the TTB has issued a COLA for a particular product does not constitute an all-encompassing safe harbor and does not insulate the seller from claims of trademark infringement or breach of contract arising from the marketing or sale of that product.

was registered as a geographic certification mark by the U.S. Trademark Office under registration number 5,225,126.  And as of July 1, 2020, pursuant to Article 3.C.2. of the United States-Mexico-Canada Agreement, the United States agreed "not to permit the sale of any product as Tequila . . . unless it has been manufactured in Mexico in accordance with the laws and regulations of Mexico governing the manufacture of Tequila."  United States-Mexico-Canada Agreement, art. 3.C.2, Nov. 30, 2018; *see also id.* art. 20.29; 19 U.S.C. § 4511.

51.     For a product to use the indication Tequila in accordance with Mexican law, the producer must adhere to certification and other requirements under Mexican law (collectively, the "Tequila Regulations"), including as applicable the Mexican Official Standard for Tequila, NOM-006-SCFI-2005, and the Tequila Mexican Standard, NMX-V-049-NORMEX.  The Tequila Regulations are principally promulgated by the Mexican General Director of Standards and enforced by the IMPI and the CRT, which is an organization comprised of agave producers, tequila businesses, and government representatives that is charged under Mexican law with, among other things, protecting the appellation of origin "Tequila" both in Mexico and abroad.  Only parties found to be in compliance with the CRT's certification requirements may be authorized by the IMPI to employ the term "Tequila" on their products, including beer products.

52.     On June 14, 2021, Modelo notified Constellation that Constellation and its affiliates were infringing the MODELO® Marks and in breach of the 2013 Sublicense. Modelo insisted that Constellation cease importing, advertising, promoting, marketing and selling Modelo Reserva, and enter into negotiations regarding the relief to which Modelo believes it is entitled.  Due to concerns over whether Constellation's use of "Tequila" in its branding of the Tequila Barrels Beer was in accordance with "all applicable laws, rules, and

regulations," as required by Section 3.1 of the 2013 Sublicense, Modelo also requested that Constellation "[p]lease confirm whether the [CRT] has approved this branding, and provide proof that this branding is in accordance with Mexican law, rules, and regulations."

53.     On June 21, 2021, Constellation responded to Modelo's notice letter.  In addition to refusing to stop selling Modelo Reserva, Constellation stated that "Modelo Reserva does not require any approval from the Tequila Regulatory Council."

### The CRT Cease and Desist Letter

54.     Constellation was wrong about the necessity for approval from the Mexican government to use the Tequila appellation.  On July 23, 2021, the CRT sent a formal letter through its U.S. counsel to both Modelo and Constellation, demanding that Constellation and Modelo take action to "[i]mmediately cease and desist" the use of "Tequila" in connection with the tequila-branded Modelo Reserva products.  (*See* Ex. B at 5.)  The letter states that because the CRT "has not granted authorization to use the Certification Mark Tequila" and "[i]in view of the recognition of TEQUILA as a certification mark and the TTB regulations requiring the use of TEQUILA in compliance with the laws of Mexico, the use of 'Tequila' on the Product packaging and advertising is in violation of U.S. laws and regulations." (*Id.* at 4.) Further, the letter explains that Constellation's "use of the wording 'Tequila Barrels' misleads consumers as to the quality, ingredients and origin of the beer" because "barrels used in the aging of Tequila are not certified" and thus "[t]here is no such thing as a 'tequila barrel.'" (*Id.*)

55.     Because Constellation refuses to stop, Modelo brings this action to address Constellation's use of the MODELO® Marks in violation of applicable laws as well as its infringement of Modelo's trademarks and its breach of contractual obligations.

**FIRST CAUSE OF ACTION**

**Trademark Infringement (15 U.S.C. § 1114)**

56.     Modelo realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 55 of this Complaint.

57.     Modelo is the owner of the U.S. federal trademark registrations for the MODELO® Marks.

58.     The MODELO® Marks are valid and subsisting trademarks in full force and effect.

59.     By its registration and extensive use and promotion of the federally registered MODELO® Marks, Modelo has established a strong association in the public mind between the MODELO® Marks and the goods and services offered by Modelo.

60.     Without Modelo's authorization or consent, Constellation has reproduced, copied, or otherwise used the MODELO® Marks in commerce in connection with the sale, offering for sale, distribution, and advertising of tequila- and bourbon-branded Modelo Reserva.

61.     Constellation's conduct has caused or is likely to cause confusion, mistake, or deception among relevant consumers that Constellation is authorized to produce and distribute Modelo Reserva or that Modelo Reserva is rendered, sponsored, or otherwise approved by Modelo.

62.     Constellation's unlawful acts constitute trademark infringement in violation of 15 U.S.C. § 1114.

63.     Modelo and the public will suffer irreparable harm if Constellation's infringement continues.  Modelo is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a) that requires Constellation to stop infringing Modelo's MODELO® Marks.

64.     On information and belief, Constellation's acts have been willful, deliberate, and intended to benefit Constellation at Modelo's expense.   Constellation's trademark infringement therefore amounts to an "exceptional case" under 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION

### Breach of Contract (Section 2.15(c))

65.     Modelo realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 64 of this Complaint.

66.     The 2013 Sublicense is a valid and binding contract between Modelo and Constellation.

67.     Modelo has fully performed under the 2013 Sublicense, including with respect to any preconditions necessary for bringing this suit.

68.     Section 2.15(c) of the 2013 Sublicense provides that Constellation shall not "adopt a Brand Extension Mark that adopts, refers to or incorporates the name of any type of distilled spirit (such as Corona Tequila)," unless Modelo does so first for a product marketed in Mexico or Canada.  (Ex. A § 2.15(c).)

69.     Modelo has not marketed any product in Mexico or Canada that would permit Constellation, under Section 2.15(c), to adopt, refer to or incorporate the name of any type of distilled spirit in connection with their use of the MODELO® Marks in the United States.

70.     Constellation is using "Modelo Reserva Finished on aged wood from Tequila Barrels" and "Modelo Reserva Finished on aged wood from Bourbon Barrels" as Brand Extension Marks.  Alternatively, Constellation is using "Modelo Reserva" as a Brand Extension Mark that is always closely associated with one of two phrases, "Finished on aged wood from Tequila Barrels" or "Finished on aged wood from Bourbon Barrels."

71.     Constellation breached Section 2.15(c)(i) of the 2013 Sublicense by adopting a Brand Extension Mark that "adopts, refers to or incorporates" the name of a type of distilled spirit (*i.e.*, tequila and bourbon, respectively).

72.     Constellation's breach of the 2013 Sublicense is causing immediate and irreparable harm to Modelo and to its goodwill and reputation, and will continue to do so unless enjoined by this Court.  Modelo is entitled to injunctive relief, as the parties agreed in Section 9.8 of the 2013 Sublicense.

73.     Constellation's breach of the 2013 Sublicense was and is willful and intentional.

### THIRD CAUSE OF ACTION

### Breach of Contract (Section 3.1)

74.     Modelo realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 73 of this Complaint.

75.     The 2013 Sublicense is a valid and binding contract between Modelo and Constellation.

76.     Modelo has fully performed under the 2013 Sublicense, including with respect to any preconditions necessary for bringing this suit.

77.     Section 3.1 of the 2013 Sublicense provides that, "[t]o protect the reputation and strength of the Trademarks and the goodwill associated with each Trademark," Constellation shall "use and/or reproduce the Trademarks in accordance with all applicable laws, rules, and regulations."  (Ex. A § 3.1.)

78.     Constellation breached Section 3.1 of the 2013 Sublicense by using the MODELO® Marks in connection with the Tequila Barrels Beer because the Tequila Barrels Beer violates Mexican laws, rules, and/or regulations governing the appellation of origin

"Tequila."  Consequently, the Tequila Barrels Beer also violates the laws of the United States, which incorporate such Mexican law.

79.    Constellation's breach of the 2013 Sublicense is causing immediate and irreparable harm to Modelo and to its goodwill and reputation, and will continue to do so unless enjoined by this Court.  Modelo is entitled to injunctive relief, as the parties agreed in Section 9.8 of the 2013 Sublicense.

80.    Constellation's breach of the 2013 Sublicense was and is willful and intentional.

## FOURTH CAUSE OF ACTION

### Breach of Contract (Section 2.15(a))

81.    Modelo realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 80 of this Complaint.

82.    The 2013 Sublicense is a valid and binding contract between Modelo and Constellation.

83.    Modelo has fully performed under the 2013 Sublicense, including with respect to any preconditions necessary for bringing this suit.

84.    Section 2.15(a) of the 2013 Sublicense provides that Constellation may adopt Brand Extension Marks, but "solely for (i) the manufacturing, bottling, and packaging of Mexican-style Beer and importing, advertising, marketing and selling such beer in the Territory . . ."  (Ex. A § 2.15(a).)

85.    The 2013 Sublicense specifically defines "Mexican-style Beer" to mean "any Beer bearing the Trademarks that does not bear any trademarks, trade names or trade dress that would reasonably be interpreted to imply to consumers in the [United States] an origin other than Mexico."  (Ex. A § 1.1 at 7.)

86.     Constellation breached Section 2.15(a) of the 2013 Sublicense by using the MODELO® Marks in connection with the Bourbon Barrels Beer because the Bourbon Barrels Beer bears "trademarks, trade names or trade dress that would reasonably be interpreted to imply to consumers in the [United States] an origin other than Mexico," and thus is not a "Mexican-style Beer."

87.     Constellation's breach of the 2013 Sublicense is causing immediate and irreparable harm to Modelo and to its goodwill and reputation, and will continue to do so unless enjoined by this Court.  Modelo is entitled to injunctive relief, as the parties agreed in Section 9.8 of the 2013 Sublicense.

88.     Constellation's breach of the Sublicense was and is willful and intentional.

## DEMAND FOR RELIEF

WHEREFORE, Modelo respectfully requests that the Court enter judgment against Defendants as follows:

1.     Declaring that Constellation has no authorization to manufacture, import, advertise, market, or sell either of the Modelo Reserva products;

2.     Declaring that Modelo has not consented to any use of the MODELO® Marks with regard to either of the Modelo Reserva products;

3.     Declaring that Constellation has breached the 2013 Sublicense;

4.     Declaring that Constellation's use of the tequila- and bourbon-based Modelo Reserva marks in connection with its Tequila Barrels Beer and Bourbon Barrels Beer is beyond the scope of the 2013 Sublicense, and thus infringes the MODELO® Marks in violation of 15 U.S.C. § 1114;

5.      Preliminarily and permanently enjoining Constellation, its agents, officers, directors, employees, franchisees, licensees, affiliates, principals, subsidiaries, parents, servants, representatives, attorneys, shareholders, divisions, successors, and assigns, and all of those in active concert or participation with them who receive notice of such judgment directly or otherwise, from producing, marketing, or selling either of the Modelo Reserva products;

6.      Enjoining Constellation, its agents, officers, directors, employees, franchisees, licensees, affiliates, principals, subsidiaries, parents, servants, representatives, attorneys, shareholders, divisions, successors, and assigns, and all of those in active concert or participation with them who receive notice of such judgment directly or otherwise, from using or authorizing others to use Modelo's intellectual property, including the MODELO® Marks and/or Trade Dress, except as expressly authorized under the 2013 Sublicense; using or authorizing others to use in any manner any service mark, trademark, trade name, domain name, trade dress, words, numbers, abbreviations, designs, colors, arrangements, collocations, or any combinations thereof that would imitate, resemble or suggest Modelo's well known MODELO® Marks except as expressly authorized under the 2013 Sublicense; otherwise infringing Modelo's MODELO® Marks or trade dress; unfairly competing with Modelo, or otherwise injuring Modelo's business reputation in any manner;

7.      Declaring that this is an exceptional case and that Modelo be awarded its costs and disbursements incurred in connection with this action, including Modelo's reasonable attorneys' fees and investigative expenses; and

8.      Any and all such other relief be awarded to Modelo as this Court deems just and proper.

## NOTICE OF FOREIGN LAW

Pursuant to Rule 44.1, Plaintiff hereby gives notice that, to the extent necessary or relevant, Plaintiff intends to rely upon Mexican law with regard to certain of the allegations and claims in this lawsuit.


Dated:  August 31, 2021          Respectfully Submitted,


Michael H. Steinberg*
Adam S. Paris
SULLIVAN & CROMWELL LLP
1888 Century Park East
Los Angeles, California  90067

Telephone:  (310) 712-6670
Facsimile:  (310) 712-8870
steinbergm@sullcrom.com
parisa@sullcrom.com

*pro hac vice application to be filed

Counsel for Plaintiff Cervecería
Modelo de México, S. de R.L. de C.V.

**APPENDIX 1:  THE MODELO MARKS**

| | Trademark | Design, if any | Reg. No. |
|---|---|---|---|
| 1. | MODELO | | 1,022,817 |
| 2. | MODELO ESPECIAL | | 1,055,321 |
| 3. | NEGRA MODELO | | 1,217,760 |
| 4. | Design of a lion |  | 3,111,586 |
| 5. | MODELO LIGHT | | 3,183,378 |
| 6. | CERVECERIA MODELO | | 3,896,060 |
| 7. | MODELO ESPECIAL |  | 4060986 |
| 8. | MODELO ESPECIAL CHELADA CERVECERIA MODELO MEXICO |  | 4,606,674 |
| 9. | MODELO ESPECIAL CHELADA CERVECERIA MODELO MEXICO |  | 4,606,676 |

| | Trademark | Design, if any | Reg. No. |
|---|---|---|---|
| 10. | CERVECERIA MODELO MEXICO |  | 4,627,676 |
| 11. | MODELO ESPECIAL CHELADA | | 4,679,536 |
| 12. | MODELO LIGHT |  | 5,003,696 |
| 13. | MODELO LIGHT |  | 5,036,716 |
| 14. | CERVEZA OFICIAL DEL JUEGO BONITO | | 5,038,089 |
| 15. | CELEBRATE CINCO | | 5,041,297 |
| 16. | MODELO LIGHT |  | 5,045,780 |
| 17. | OFFICIAL FAN OF THE BEAUTIFUL GAME | | 5,095,971 |
| 18. | OFFICIAL BEER OF THE BEAUTIFUL GAME | | 5,138,986 |
| 19. | CASA MODELO | | 5,143,147 |
| 20. | MODELO NEGRA | | 5,143,148 |

| | Trademark | Design, if any | Reg. No. |
|---|---|---|---|
| 21. | M CERVEZA MODELO OFFICIAL BEER OF THE BEAUTIFUL GAME |  | 5,297,243 |
| 22. | M CERVEZA MODELO ESPECIAL |  | 5,297,244 |
| 23. | CERVEZA MODELO ESPECIAL |  | 5,307,114 |
| 24. | CERVEZA MODELO ESPECIAL 1925 |  | 5,307,115 |
| 25. | CERVEZA MODELO ESPECIAL 1925 |  | 5,307,116 |
| 26. | CERVEZA MODELO 1925 CERVECERIA MODELO MEXICO |  | 5,307,117 |

| | Trademark | Design, if any | Reg. No. |
|---|---|---|---|
| 27. | CERVEZA MODELO 1925 CERVECERIA MODELO MEXICO | | 5,307,118 |
| 28. | CERVEZA MODELO 1925 CERVECERIA MODELO MEXICO | | 5,307,604 |
| 29. | M CERVEZA MODELO CERVEZA OFICIAL DEL JUEGO BONITO | | 5,317,781 |
| 30. | CERVEZA MODELO NEGRA 1925 | | 5,330,255 |
| 31. | CERVEZA MODELO NEGRA 1925 | | 5,330,256 |
| 32. | CERVEZA MODELO NEGRA | | 5,330,257 |

| | Trademark | Design, if any | Reg. No. |
|---|---|---|---|
| 33. | CHELADA TAMARINDO PICANTE | | 5,331,554 |
| 34. | CERVEZA MODELO ESPECIAL | | 5,346,787 |
| 35. | MODELO CHELADA ESPECIAL | | 5,371,011 |
| 36. | CERVEZA MODELO 1925 | | 5566181 |
| 37. | MODELO CHELADA | | 5,566,361 |
| 38. | CERVEZA MODELO | | 5,570,943 |
| 39. | CERVEZA MODELO CERVECERIA MODELO MEXICO1925 CHELADA ESPECIAL | | 5,578,954 |
| 40. | CERVEZA MODELO CERVECERIA MODELO MEXICO1925 CHELADA TAMARINDO PICANTE | | 5,578,955 |

| | Trademark | Design, if any | Reg. No. |
|---|---|---|---|
| 41. | CERVEZA MODELO CERVECERIA MODELO MEXICO1925 CHELADA TAMARINDO PICANTE | | 5,578,956 |
| 42. | VIVE EL FOOTBALL | | 5,638,529 |
| 43. | CERVEZA MODELO NEGRA | | 5,728,221 |
| 44. | ELABORADAS CON UN ESPÍRITU LUCHADOR | | 5,734,983 |
| 45. | CERVEZA MODELO CERVECERIA MODELO MEXICO1925 CHELADA LIMON Y SAL | | 5,892,160 |
| 46. | CERVEZA MODELO CERVECERIA MODELO MEXICO 1925 CHELADA LIMON Y SAL | | 5,915,673 |
| 47. | FIGHT FOR GOLD, FIGHT FOR GLORY | | 5,927,191 |
| 48. | MODELITO ESPECIAL | | 6,081,470 |

|  | Trademark | Design, if any | Reg. No. |
|---|---|---|---|
| 49. | MANGO Y CHILE |  | 6,174,941 |